John W. Trainor, Administrator of Estate of Clarence Corrigan, Deceased, Plaintiff-Respondent, v. Glenn McCann' and Arthur Benckendorf, Defendants-Petitioners.

## Gen. No. 10,518.

Opinion filed August 28, 1951. Released for publication September 17, 1951.

COOK & MARSHALL, of Somonauk, and HIBBS, POOL & LANGER, of Ottawa, for petitioners.

JAMES L. WARING, of Ottawa, and BERRY & O'CONOR, of Streator, for respondent.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

John W. Trainor, administrator of the estate of Clarence Corrigan, deceased, started a suit in the circuit court of La Salle county, against Glenn McCann

and Arthur Benckendorf to recover damages for injuries which caused the death of Clarence Corrigan. The case was tried before a jury. At the conclusion of the evidence for plaintiff, the defendants entered a motion for a directed verdict and tendered an instruction for the same. This motion was denied. The defendants then offered evidence, and at its conclusion a motion was made for a directed verdict which was also denied. The case was then submitted to a jury that found the issues in favor of the defendants. The plaintiff entered a motion for a new trial which the court granted. The defendants filed a petition for leave to appeal to this court, which motion was granted, and the case is now before us for our consideration.

The complaint originally consisted of two counts, one for willful and wanton conduct on the part of the defendants, the other a general negligence count. At the conclusion of the evidence for plaintiff, he dismissed his suit as to the willful and wanton count, so that we are not now concerned with it.

The complaint charged that on January 10, 1948, the defendant, Benckendorf, was delivering a load of seven or eight tons of coal to the farm home of Ralph Jenkins near Ransom in La Salle county, Illinois; that the defendant, McCann, owned the truck that was driven by Benckendorf, as his agent and employee; that the deceased, Corrigan, was the employee of Jenkins; that Benckendorf was backing the truck up to the Jenkins' house preparatory to unloading the coal; that Corrigan was standing at the rear of the truck next to the house and that Benckendorf negligently operated and drove the truck against Corrigan and killed him; that at the time of the accident, Corrigan was in the exercise of ordinary care for his own safety. The defendants insist that the plaintiff cannot have a new trial if he failed to make out a prima facie case, which they insist that the plaintiff failed to do.

263

■ It has been repeatedly held that the trial court cannot set aside a verdict of not guilty and grant the plaintiff a new trial if the record shows that the plaintiff failed to make a prima facie case, even if there is error in the instructions. *Muench v. Standard Brewery*, 113 Ill. App. 512 and *Kavanaugh v. Washburn*, 320 Ill. App. 250. These three questions arise: Does the evidence show that the plaintiff made out a prima facie case? Does the evidence show that the defendants were negligent in the operation of the coal truck? Was plaintiff's intestate in the exercise of ordinary care for his own safety?

The evidence shows that Benckendorf drove the truck into the yard of the farm home of Jenkins. Jenkins directed him where to drive. He followed Jenkins and drove around on the west side of the house where there was a window in the cellar wall in which the coal was to be dumped. Benckendorf drove the truck down near the house and then backed up towards the house when the wheels began to spin. There was some snow and ice on the ground, but the ground was frozen underneath. A short distance west of the house the ground was bare of snow and ice. When the wheels began to spin, Benckendorf stopped his truck, got off and handed the coal chute to Jenkins and Corrigan. Those two placed the end of the chute in the window of the cellar. This coal chute was approximately five feet long and about twenty inches wide. Jenkins stood on the right side of the chute and Corrigan the left side. They were looking towards the truck. Benckendorf got on the truck again and started to back up. The rear wheels again began to spin. Benckendorf let the truck run forward about six inches, then tried to back, and the rear wheels again began to spin, then they suddenly held and the truck went backwards and the rear of the truck crushed Corrigan's head and killed him. At the time the truck

was first stopped, the rear of the same was eight or ten feet from the house. The ground west of the house sloped about one foot every twenty feet. The rear of the truck extended approximately four feet back of the rear wheels. The truck was what is commonly called a dump truck. Jenkins testified that when it stopped, the truck was about five feet from the end of the coal chute, and the coal chute was in the window about one foot. Jenkins was the only eyewitness to this accident, and the only one who testified as to how it occurred. It is from this evidence that the appellant claims it shows that plaintiff's intestate, Corrigan, was not in the exercise of ordinary care for his own safety, but does show that Benckendorf was not guilty of any negligence that approximately contributed to the death of Corrigan.

It is conceded that when it stopped, the rear of the truck was not more then ten feet from the house. The chute which was five feet long, was to be coupled to the back of the truck, then the coal dumped into the cellar. If one foot of the chute was in the cellar, it could not have been more than four feet on the outside of the wall. Then the end of the chute would have to be lifted up so as to connect with the rear of the truck, which would necessitate the truck being backed to within a few feet of the house. There is no evidence to show that Benckendorf did not use the ordinary method that a careful and prudent person would have used in backing the truck to the place where it should be unloaded. It is a well known fact that a dual wheel truck such as this, or an automobile in trying to go forward or backward with wheels spinning on account of ice, when wheels take hold will suddenly move. Jenkins testified that he saw the wheels of the truck spinning, and if he could see it, we see no reason why Corrigan could not also see the wheels spinning when Benckendorf was attempting to back the truck. Cer-

tainly Corrigan knew that a heavily loaded truck such as this when backing was liable to injure him.

██ Under the evidence in this case it is our conclusion that the plaintiff failed to prove that the deceased, Corrigan, was in the exercise of due care for his own safety, and he also failed to prove any negligence on the part of the defendants that was the proximate cause of the deceased, Corrigan's injuries.

The circuit court of La Salle county should not have set aside the verdict in favor of the defendants and granted the plaintiff a new trial. The judgment of the circuit court is hereby reversed, and the cause remanded with directions to enter a judgment in favor of the defendants.

*Reversed and remanded with directions for the trial court to overrule the motion for a new trial.*